Norberto CABALLERY, Petitioner,

v.

UNITED STATES PAROLE COMMIS-
SION; U. S. Probation Officer, South-
ern District of New York; Warden, Met-
ropolitan Correctional Center, New
York, N.Y., Respondents.

No. 81 Civ. 2261(MEL).

United States District Court,
S. D. New York.

May 20, 1981.

Caesar D. Cirigliano, Federal Defender
Services Unit, The Legal Aid Society, New
York City, for petitioner; Jack Lipson, New
York City, of counsel.

John S. Martin, Jr., U. S. Atty. for the S.
D. of New York, New York City, for the
United States of America; Paul L. Shecht-
man, Asst. U. S. Atty., New York City, of
counsel.

LASKER, District Judge.

Norberto Caballery petitions for a writ of
habeas corpus under 28 U.S.C. § 2255 on the
ground that the application of Parole Com-
mission Regulation § 2.10(c), 28 C.F.R.
§ 210(c), to the computation of his sentence
violates the *ex post facto* clause. The peti-
tion is denied.

On December 30, 1974, Caballery entered a plea of guilty to a charge of having embezzled bank funds in violation of 18 U.S.C. § 656. He was sentenced on March 17, 1975 under the Youth Corrections Act to a maximum term of six years imprisonment. 18 U.S.C. § 5017(c). On May 5, 1976, Caballery was released from imprisonment and placed under parole supervision. In October, 1979, after approximately three and one-half years of parole supervision, he allegedly ceased reporting to his supervising parole officer, and on February 26, 1980, the Parole Commission issued a warrant for his arrest as a parole violator, charging Caballery *inter alia* with absconding from parole supervision. Caballery voluntarily surrendered on February 25, 1981 and is now held in custody pending a parole violation hearing scheduled for May 19, 1981.

## I.

The Youth Corrections Act provides that: "A youth offender committed under section 5010(b) of this chapter shall be released conditionally under supervision on or before the expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction." 18 U.S.C. § 5017(c)

In September, 1977, the Parole Commission adopted an interpretative regulation which provides in relevant part that:

"Service of the sentence of a committed youth offender or a person committed under the Narcotic Addict Rehabilitation Act commences to run from the date of conviction and is interrupted ... when such prisoner or parolee ... (3) has absconded from parole supervision...." 28 C.F.R. § 2.10(c)

Caballery contends that under the Youth Corrections Act, 18 U.S.C. § 5017(c), he was required to be "discharged unconditionally on or before six years from the date of his conviction" so that he completed his sentence on March 17, 1981, six years from his sentence date, despite the fact that for a portion of that time he allegedly absconded from parole supervision. According to Caballery, the interpretative regulation adopted in 1977, 28 C.F.R. § 2.10(c)(3), which would toll the time during which he had absconded from parole supervision, cannot constitutionally be applied to him because it was adopted after his 1975 sentence. Caballery emphasizes that, at the time of his sentence in 1975, there were no regulations in effect which provided for any tolling of sentence during the time when a youth offender had failed to fulfill his parole supervision obligations. Therefore, Caballery argues, application of § 2.10(c)(3) to him serves to extend the length of his sentence beyond the maximum term permitted when the sentence was imposed and violates the *ex post facto* clause.

The government responds that § 2.10(c)(3) merely codified prior case law which provided for tolling of criminal sentences generally for periods when the sentence was not actually being served, such as during escape, while the defendant is on bail pending appeal, or while the defendant is confined for civil contempt. The government contends that the fact that several courts had applied these principles specifically to the tolling of sentences under the Youth Corrections Act establishes that § 2.10(c)(3) did not serve to extend the length of Caballery's sentence beyond the term permitted in 1975, and therefore its application to Caballery does not violate the *ex post facto* clause. Moreover, the government argues that even if the Parole Commission's practice prior to the adoption of § 2.10(c)(3) was not to toll sentences for periods during which parolees had absconded from parole supervision, such a practice was erroneous and thus any change in practice does not violate the *ex post facto* clause.

In response to the government's contention that § 2.10(c)(3) merely codified pre-existing case law, Caballery notes that the first regulation concerning tolling of sentences under the Youth Corrections Act adopted by the Parole Commission in 1976 provided for tolling only when the youth offender "is on bail pending appeal or is in escape status," 41 Fed.Reg. 19328 (May 12,

1976), and did not refer to periods when the youth offender had absconded from parole supervision. It was not until December, 1976 that the Parole Commission proposed an amendment to § 2.10 to provide for tolling when a youth offender had "absconded from his or her district of parole supervision," 41 Fed.Reg. 52889–52890, and the commentary accompanying the proposed amendment was framed in terms of a change in future practice. This proposed amendment was adopted on March 2, 1977 and did not go into effect until August 1, 1977. 42 Fed.Reg. 12043–12044. Caballery emphasizes that it was not until August 17, 1977 that the Parole Commission proposed an amendment to § 2.10 relevant to Caballery's situation by providing for tolling with respect to youth offenders who absconded from their parole supervision without leaving their district of supervision. The accompanying commentary stated that "this proposal would enlarge the definition of 'absconding' in the existing rule ...," 42 Fed.Reg. 41436–41437, thus establishing, Caballery argues, that prior to September 30, 1977 when this latest proposed amendment was adopted, the Parole Commission did not have any rule for tolling sentences for youth offenders in Caballery's situation and that these new regulations effected changes in practice rather than merely codifying past practice.

In response to the government's contention that any prior practice of not tolling sentences for youth offenders who had absconded from parole supervision would have been erroneous and therefore not susceptible of *ex post facto* protection, Caballery argues that such prior practice cannot be dismissed as erroneous because there has been no definitive judicial pronouncement to that effect. In these circumstances, Caballery submits, he is entitled to the protection of the sentence computation practice in effect at the time he was sentenced.

## II.

■ The *ex post facto* clause "forbids the Congress and the States from enacting any law 'which imposes a punishment for an act which is not punishable at the time it was committed, or imposes additional punishment to that then prescribed.'" *Weaver v. Graham*, —— U.S. ——, ——, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981), *quoting Cummings v. Missouri*, 4 Wall. 277, 325–326, 18 L.Ed. 356 (1867). Thus a change in law violates the *ex post facto* clause "if it is both retrospective and more onerous than the law in effect on the date of the offense." *Weaver v. Graham, supra* —— U.S. at ——, 101 S.Ct. at 965.

Here the "law in effect on the date of the offense" provided that a youth offender "shall be discharged unconditionally on or before six years from the date of his conviction." 18 U.S.C. § 5017(c). The threshold issue raised by Caballery's petition is whether this language in the Youth Corrections Act mandated his release on March 17, 1981 (six years from the date of his sentence) regardless of whether he had actually served the sentence imposed. We agree with the government that it did not.

■ It is true, as Caballery asserts, that the statutory language of the Youth Corrections Act is broad and unequivocal, and that no exceptions are explicitly provided. *See Hartwell v. Jackson*, 403 F.Supp. 1229, 1230 (D.D.C.1975); *Fish v. United States*, 254 F.Supp. 906, 906–07 (D.Md.1966). However, it is a well established principle that the "mere lapse of time without imprisonment or other restraint contemplated by law does not constitute service of sentence," *Anderson v. Corall*, 263 U.S. 193, 196, 44 S.Ct. 43, 44, 68 L.Ed. 247 (1923). Consequently, it has long been held with respect to an adult offender that escape from imprisonment tolls the running of a sentence, *see, e. g., Theriault v. Peek*, 406 F.2d 117 (5th Cir. 1968), *cert. denied*, 394 U.S. 1021, 89 S.Ct. 1644, 23 L.Ed.2d 47 (1969), that time spent on bond pending appeal is not to be included in computing time served, *see Frye v. Moran*, 302 F.Supp. 1291, 1295 n.16 (W.D.Tex.1969); Fed.R.Crim.Pr. 38 (promulgated in 1933), and that confinement for civil contempt stays the running of a criminal sentence, *see United States v. Liddy*, 510 F.2d 669 (D.C.Cir. 1974).

■ This principle, that the "mere lapse of time without imprisonment or other re-

straint contemplated by law does not constitute service of sentence," applies equally in the context of the Youth Corrections Act. The Youth Corrections Act contemplates rehabilitation of youth offenders, a condition which cannot occur when the offender is not fulfilling the conditions of his sentence. Consequently, despite the broad language of 18 U.S.C. § 5017(c), it has been held that a sentence under the Youth Corrections Act is tolled by escape, *Suggs v. Daggett*, 522 F.2d 396 (10th Cir. 1975), by bail release pending appeal, *Frye v. Moran*, 302 F.Supp. 1291 (D.C.Tex.1969), and by service of a sentence for civil contempt, *United States v. Marshall*, 532 F.2d 410 (5th Cir.), *cert. denied*, 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1976). Each of these cases antedated the Parole Commission's adoption of § 2.10(c) which provides for tolling of the youth offender's sentence.

The distinguishing factor between the above cases and this case is that here the Parole Commission's adoption of the rule that absconding from parole supervision serves to toll the youth offender's sentence has come before judicial consideration of the question. However, we agree with the analysis set forth in *Henrique v. United States Marshal*, 476 F.Supp. 618 (N.D.Cal. 1979) that the distinction is not dispositive. The fact that the courts did not have occasion to consider whether a youth offender's absconding from parole supervision serves to toll his sentence prior to Caballery's sentencing does not mean that the law in effect at the time of Caballery's sentencing was that no such tolling could occur. To the contrary, such a reading of the Youth Corrections Act would work against the Congressional objective of rehabilitation and strain reason. Regardless of what the informal practice of the Parole Commission (and its predecessor, the Parole Board) may have been with respect to youth offenders who absconded from parole supervision prior to its 1977 interpretative regulation (and Caballery has not demonstrated that the actual practice of the Commission had been to treat the sentence as not tolled), under any reasonable interpretation of the Youth Corrections Act, Caballery's sentence is subject to tolling for periods in which he has absconded from parole supervision. Just as sentences under the Youth Corrections Act have been tolled for periods in which the youth offender escaped from confinement, *e. g., Suggs v. Daggett, supra*, such sentences may, under the same statutory language, also be tolled for periods during which the youth offender had absconded from parole supervision. Both interpretations are mandated by the policy underlying the Youth Corrections Act.

In short, tolling of Caballery's sentence for the time during which he may have absconded from parole supervision would not permit punishment "more onerous than the law in effect on the date of the offense," *Weaver v. Graham, supra* at ——, 101 S.Ct. at 965. Rather, the language of the Youth Corrections Act in effect on the date of Caballery's offense cannot be reasonably interpreted to preclude such tolling. In these circumstances, the Parole Commission's interpretative regulation did not effect a change in law or subject Caballery to any more onerous punishment and therefore its application to Caballery does not violate the *ex post facto* clause.

For the above reasons, the petition for a writ of habeas corpus is denied.

It is so ordered.